IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY,<br>       Plaintiff,<br><br>v.<br><br>THE TANOAN COMMUNITY ASSOCIATION, INC., and RICHARD GONZALES and NANCY GONZALES, individually, and as Parents and Next Friend of J.G.,<br>       Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, The Cincinnati Insurance Company ("Cincinnati"), by and through its legal counsel, for its Complaint for Declaratory Judgment and Other Relief against The Tanoan Community Association, Inc. and Richard Gonzales and Nancy Gonzales, individually, and as Parents and Next Friend of J.G. (collectively, "Gonzalez") states as follows:

**NATURE OF ACTION**

1. This action arises from a controversy between Cincinnati and its Insured, The Tanoan Community Association, Inc. (the "Association") regarding whether Pillar Policy Number EMO 057 44 02 which Cincinnati issued to the Association for the February 22, 2022 to February 22, 2023 **policy period**[1], does not provide coverage and defense for the lawsuit filed on April 29, 2025 against the Association as case number D-202-CV-2025-04019 in the Bernalillo County District Court, captioned *Richard Gonzales and Nancy Gonzales, Individually, and as Parents and Next Friend of J.G., v. The Tanoan Community Association, Inc., Kaleb Garza, Zachary Tongier,*

---

[1] Bold-faced terms are defined Policy terms.

1

*Andrea L. Frederickson, J.L., Melissa Lopez, and Farmers Insurance Company of Arizona* (the "Underlying Lawsuit").

2. Cincinnati brings this action for declaratory judgment and other relief pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure to obtain a declaration that it has no duty to defend and indemnify the Association with respect to the Lawsuit. A copy of the Complaint that was filed in the Lawsuit is attached hereto as **Exhibit A**.

## THE PARTIES

3. Plaintiff, Cincinnati is incorporated in the State of Ohio and maintains its principal place of business in Fairfield, Ohio.

4. Defendant, The Tanoan Community Association, Inc., is a non-profit corporation incorporated in the State of New Mexico with its principal place of business in Albuquerque, New Mexico.

5. Defendants, Richard Gonzalez, Nancy Gonzalez, and J.G. are citizens of the State of New Mexico.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the Plaintiff and Defendants and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. This Court has the authority to declare the rights and obligations of the parties under the terms and provisions of the Cincinnati Policy issued to the Association pursuant to 28 U.S.C. §2201(a), 28 U.S.C. §2202, and Rule 57 of the Federal Rules of Civil Procedure.

8. Venue is appropriate pursuant to 28 U.S.C. §1391(b)(1) because Defendants are residents and citizens of the State of New Mexico.

9. Venue is also appropriate in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District and the Underlying Lawsuit upon which this declaratory judgment action is based is pending in Bernalillo County, New Mexico, which is located in this District.

## THE CINCINNATI POLICY

10. Cincinnati issued Pillar Policy Number EMO 057 44 02 to The Tanoan Community Association, Inc. for the February 22, 2022 to February 22, 2023 **policy period** (the "Policy"). A certified copy of the Policy (with confidential information redacted) is attached hereto as **Exhibit B**.

11. The Policy contains a Community Association directors and Officers Liability Coverage Part ("D&O Coverage Part").

12. The Declarations of the D&O Coverage Part state:

> **THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. …**

(capitalized and bold-faced in the Policy.)

13. The Insuring Agreements of the D&O Coverage Part of the Policy read as follows:

**SECTION I - INSURING AGREEMENTS**

> **A.** We will pay on behalf of the **insured persons** all **loss** which they shall be legally obligated to pay, except for such **loss** which the **organization** actually pays as indemnification, resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **wrongful act**.
>
> **B.** We will pay on behalf of the **organization** all **loss** which the **organization** is required to pay as indemnification to the **insured persons** resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **wrongful act**.

3

  **C.** We will pay on behalf of the **organization** all **loss** which the **organization** is required to pay resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, against the **organization** for a **wrongful act**.

  We will have the right and duty to select counsel and defend the **insureds** against any such **claim**.

(Ex. B., Policy, D&O Coverage Part, Section I.).

  14. **Policy period** is defined in Section I.P. of the General Provisions as "the period from the inception date to the expiration date as set forth in the Declarations, or to the earlier date of the cancellation of the applicable Coverage Part.

  15. The period set forth in the Declarations is February 22, 2022 to February 22, 2023.

  16. **Extended reporting period** means the periods of time described in Section **XIX** of the General Provisions. (Section I.H. of the General Provisions).

  17. The periods of time described in Section **XIX** of the General Provisions are the following:

   **1.** <u>Automatic Extended Reporting Period</u>

    A 90 day Automatic Extended Reporting Period is automatically provided without additional charge. The Automatic Extended Reporting Period starts immediately after the end of the **policy period** of the applicable Coverage Part.

   **2.** <u>Optional Extended Reporting Periods</u>

    **a.** The **named insured** shall have the option to purchase a 12 month Extended Reporting Period to replace the 90 day Automatic Extended Reporting Period for an additional premium equal to 75% of the expiring annual premium for the applicable Coverage Part.

    **b.** Additional Optional Extended Reporting Periods may be available for an additional premium charge if an Extended Reporting Period longer than 12 months is desired. It is solely our decision whether to permit the first **named insured** to purchase an Extended Reporting Period with a term longer than 12 months.

>  The first **named insured** must give us a written request of their intent to purchase an Optional Extended Reporting Period within 60 days after the **policy period** of the applicable Coverage Part or that option shall terminate. The Optional Extended Reporting Period will not go into effect unless the first **named insured** pays the additional premium promptly when due.

18. The 90 day Automatic Extended Reporting Period expired on May 23, 2023.

19. The Association did not purchase a 12 month Extended Reporting Period.

20. The Association did not purchase an Optional Extended Reporting Period.

21. **Insured** is defined in the D&O Coverage Part, Section II.K. as "the **organization** and the **insured persons**." (Ex. B, Policy, Section II.K. of the D&O Coverage Part).

22. **Organization** is defined in Section II.O. of the D&O Coverage Part, as follows:

    > O.  **Organization** means:
    >
    >   1. The **named insured;**
    >   2. Any **subsidiary;** and
    >   3. A property management company, but only for claims arising out of its **wrongful acts** while acting at the direction of the **named insured** or arising out of the **wrongful acts** of the **insureds** for which the property management company is vicariously liable.

(Ex. C, Policy, Section II.O. of the D&O Coverage Part).

23. **Named insured** is defined in Section I.M. of the General Provisions Applicable to all Liability Coverage Parts ("General Provisions") in pertinent part as "the entity or entities shown in the applicable Declarations as a Named Insured …." (Ex. B, Policy, Section I.M. of the General Provisions).

24. The Tanoan Community Association, Inc. is identified in the D&O Declarations as the Named Insured, and is the **organization**.

25. **Subsidiary** is defined in Section I.S. of the General Provisions as follows:

    > **Subsidiary** means any entity in which the **named insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing

the present right to vote for election of directors, trustees, managers (if a limited liability company) or equivalent positions and any such entity in its capacity as a **debtor in possession.**

(Ex. B, Section I.S., General Provisions).

26. Farmers Insurance Company of Arizona is not a **subsidiary** of The Tanoan Community Association, Inc.

27. **Insured persons** is defined at Section II.L. of the D&O Coverage Part as follows:

> **L.** **Insured persons** means:
> 1. **Directors and officers**;
> 2. All natural persons who were, now are, or shall become an **employee** or committee member, whether or not they were, are or shall be compensated, of the **organization**;
> 3. All natural persons who were, now are, or shall become members or volunteers of the **organization** while acting on behalf of the **organization** in a voluntary capacity at the direction of the **directors and officers**; and
> 4. Any natural person who is a property manager or an employee of a property management company, but only for **claims** arising out of their **wrongful acts** while acting at the direction of the **named insured** or any **subsidiary** or arising out of the **wrongful acts** of the **insureds** for which the property management company's employees are vicariously liable; provided, however, that any coverage under this Coverage Part for any such property manager shall be excess of any indemnification or insurance otherwise available to such property manager from any other source.

(Ex. B, Policy, Section II.L. of the D&O Coverage Part).

28. **Directors and Officers** is defined in Section II.C. of the D&O Coverage Part as "all natural persons who were, now are, or shall become an officer, a duly elected or appointed member of the board of directors, trustees, regents, managers, governors, a **LLC manager** or an equivalent position of the **organization.**"

29. Defendants Kaleb Garza, Zachary Tongier, Andrea L. Frederickson, J.L., Melissa Lopez are not **insured persons** under the Policy.

30. **Claim** is defined in Section II.A. of the D&O Coverage Part as follows:

    **A.**    **Claim** means:
1. A written demand for monetary damages or non-monetary relief;
2. A civil proceeding commenced by the filing of a complaint or similar pleading;
3. A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order or similar document;
4. An arbitration, mediation or similar alternative dispute resolution proceeding in which monetary damages are sought if the **insured**:
    a. Is required to participate in such proceeding; or
    b. Agrees to participate in such proceeding with our written consent, such consent not to be unreasonably withheld;
5. A criminal proceeding commenced by the return of an indictment;
6. A written request to toll or waive a statute of limitations related to a potential **claim** described in Definitions **A.1** through **A.5.** above; or
7. A civil, administrative, regulatory or criminal investigation of an **insured person** once such **insured person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definitions **A.2.**, **A.3** or **A.5.** may be commenced. The maximum Limit of Insurance for all such investigations against any **insured persons** shall be the Investigative Costs Sublimit set forth in the Community Association Directors and Officers Liability Coverage Part Declarations. This sublimit shall be part of and not in addition to the Limit of Insurance set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and does not increase our maximum aggregate liability under this Coverage Part;

against any **insured**, including any appeal therefrom.

(Ex. B, Section II.A. D&O Coverage Part).

    31.    The Underlying Lawsuit is a **claim** pursuant to subparagraph 2 of the **claim** definition, Section II.A.2. D&O Coverage Part.

    32.    **Wrongful act** is defined in Section II.W. of the D&O Coverage Part in pertinent part as:

    **W.**    **Wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty including any **personal injury** or **publishers liability** committed, attempted or allegedly committed or attempted on or after the Retroactive Date, if any, set forth in the Community Association Directors and Officers Liability Coverage Part Declarations and prior to the end of the **policy period** by:

    […]

    **4.**  The **organization.**

33. **Loss** is defined in part in Section II.N. of the D&O Coverage Part as follows:

  **N.** **Loss** means **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage hereunder applies, including damages, judgments, settlements, prejudgment and postjudgment interest, and punitive or exemplary damages or the multiplied portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary or multiplied damages.

  […]

34. Section VI. of the General Provisions of the Policy reads as follows:

**SECTION VI - NOTICE OF A WRONGFUL ACT**

If prior to the end of the **policy period** of the applicable Coverage Part, any of the **insureds** first become aware of a specific **wrongful act** they believe is likely to give rise to a **claim,** and if any of the **insureds** give us written notice as soon as practicable, but prior to the end of the **policy period** of the applicable Coverage Part, of:

**A.** The specific **wrongful act;**
**B.** The injury or damage which has or may result therefrom; and
**C.** The circumstances by which the **insureds** first became aware thereof;

then any **claim** subsequently made arising out of such **wrongful act** shall be deemed to have been made when notice of the **wrongful act** was first given.

35. Section III. Exclusion A. of the D&O Coverage Part reads in part as follows:

  **A.** <u>Bodily Injury/Property Damage</u>

   We are not liable to pay, indemnify or defend any **claim** for actual or alleged:
   1. Bodily injury, sickness, disease, or death of any person, mental anguish, or emotional distress; …

36. Section VI.A. of the D&O Coverage Part reads as follows:

  **A.** We will have the right and duty to select counsel and defend the **insureds** against any **claim;** however, we will have no duty to defend the **insureds** against any **claim** to which this insurance does not apply.

## THE UNDERLYING LAWSUIT

37. The Underlying Lawsuit was filed against the Association on April 29, 2025.

38. The Underlying Lawsuit alleges that the Association failed to prevent the stabbing, life threatening injuries, and mental and emotional distress sustained by Plaintiff J.G. in the gated community of Tanoan West which the Association allegedly had a duty to keep safe.

39. The Underlying Lawsuit alleges that the Association's failure to keep its gated community safe directly caused J.G. to be stabbed and sustain life threatening injuries and to sustain mental and emotional distress.

40. The Underlying Lawsuit demands the recovery of damages for the bodily injuries and mental and emotional distress sustained by J.G.

41. The Underlying Lawsuit is a **claim** against the Association for J.G.'s bodily injury, mental anguish and emotional distress.

## COUNT I

### Declaratory Judgment – The Underlying Lawsuit Is Not a Claim Made Against The Association During the Policy Period

42. Cincinnati repeats and realleges the allegations of paragraphs 1 through 41 of this Complaint as the allegations of paragraph 42 as though fully set forth herein.

43. Farmers Insurance Company of Arizona is not a **subsidiary** (as that term is defined in the Policy) of The Tanoan Community Association, Inc. and is not an **insured** under the Policy.

44. Defendants Kaleb Garza, Zachary Tongier, Andrea L. Frederickson, J.L., Melissa Lopez are not **insured persons** (as that term is defined) under the Policy and are not **insureds** under the Policy.

45. The Association is the only defendant named in the Underlying Lawsuit which is an **insured** under the Policy since it is the **organization** as defined in Section II.N. of the D&O Coverage Part.

46. Insuring Agreement I.C. requires that the **claim** be made against the **organization** during the **policy period** for a **wrongful act:**

> **C.** We will pay on behalf of the **organization** all **loss** which the **organization** is required to pay resulting from any **claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, against the **organization** for a **wrongful act**.

47. As defined in the Policy, a **wrongful act** is wrongdoing actually or allegedly committed by the Association. (*See*, definition of **wrongful act**, cited in ¶32 *supra*).

48. Under cover of a May 23, 2022 email from the Association's insurance agent, the Association submitted to Cincinnati a subpoena for records and videos that it had received which was issued out of the case of *Richard Gonzales on behalf of minor child J.G. v. Zachory Tongier*, case no. D-202-CV-2022-2656 in the Second Judicial District Court, Bernalillo County, New Mexico ("Subpoena"), an application for restraining order filed therein against Zachory Tongier, the temporary restraining order entered in that case against Zachory Tongier, and a May 19, 2022 email from Paul Skojec of the Association. (Referred to herein as the "May 23, 2022 Materials"; attached hereto as **Exhibit C**).

49. The case of *Richard Gonzales on behalf of minor child J.G. v. Zachory Tongier*, case no. D-202-CV-2022-2656 does not name the Association as a defendant and makes no allegation against the Association of an actual or alleged **wrongful act** committed by the Association.

50. The case of *Richard Gonzales on behalf of minor child J.G. v. Zachory Tongier*, case no. D-202-CV-2022-2656 is not a **claim** (as defined in Section II.A., *see* ¶30, *supra* for

10

definition) made against the Association for a **wrongful act** committed by the Association, and does not fall within the scope of the Insuring Agreement and therefore is not covered by the Policy.

51. The Subpoena is not a **claim** (as defined in Section II.A., *see* ¶30, *supra* for definition) made against the Association.

52. The Subpoena makes no allegation against the Association of an actual or alleged **wrongful act** committed by the Association.

53. Because the Subpoena is not a **claim** made against the Association for a **wrongful act** committed by the Association, it does not fall within the scope of the Insuring Agreement and is not covered by the Policy.

54. The May 23, 2022 email from the Association's insurance agent, the May 19, 2022 email from Paul Skojec of the Association, the Subpoena, the application for restraining order filed against Zachory Tongier, and the temporary restraining order entered in the case against Zachory Tongier do not identify any **wrongful act** committed by the Association.

55. Because the May 23, 2022 Materials do not identify a specific **wrongful act** committed by the Association which the Association believes is likely to give rise to a **claim** against the Association; the injury or damage which has or may result therefrom; and the circumstances by which the Association first became aware thereof, the May 23, 2022 Materials are not a "Notice of a Wrongful Act" under Section VI. of the Policy. (*see* citation of "Section VI—Notice of Wrongful Act" in ¶34 *supra*).

56. On May 25, 2022, Cincinnati advised the Association that the Policy does not provide coverage for the Subpoena and Cincinnati has no duty to defend or indemnify the Subpoena; that the May 23, 2022 Materials are not a "Notice of a Wrongful Act" under Section

11

VI. of the Policy; and that if the Association would like to provide notice of a wrongful act pursuant to Section VI, that written notice must be provided before the Policy expires on February 22, 2023.

57. The Association did not provide written notice of a **wrongful act** pursuant to Section VI before the Policy expired on February 22, 2023.

58. The Underlying Lawsuit is a **claim** made against the Association, as "**claim**" is defined in Section II.A.2. of the D&O Coverage Part.

59. As stated in the Declarations (cited herein in ¶12 *supra*), and in Insuring Agreement I.C., the **claim** against the Association must be first made during the February 22, 2022 to February 22, 2023 **policy period** or the **extended reporting period.**

60. The Association did not purchase an Optional Extended Reporting Period.

61. Pursuant to Section XIX of the General Provisions, the automatic **extended reporting period** expired on May 23, 2023.

62. The Underlying Lawsuit, which was filed on May 28, 2025, is a **claim** that was first made against the Association on May 28, 2025, after the **policy period** had expired on February 22, 2023 and after the automatic **extended reporting period** expired on May 23, 2023.

63. Because the Association did not provide written notice of a **wrongful act** pursuant to Section VI before the Policy expired on February 22, 2023, the Underlying Lawsuit cannot be deemed pursuant to Section VI. to be a **claim** made against the Association during the **policy period**.

64. Because the Underlying Lawsuit is not a **claim** for **wrongful acts** committed by the Association that was made against the Association during the **policy period** or the **extended reporting period**, it does not fall within the scope of the Insuring Agreement and is not covered by the Policy.

65. Accordingly, the Policy does not provide coverage for and does not apply to the Underlying Lawsuit.

66. **Loss** is defined in Section II.N. of the D&O Coverage Part, in part, as **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage applies, including damages, settlements, and judgments. (Ex. B., Policy).

67. **Defense costs** are defined in part in Section II.B. as "reasonable and necessary fees, costs, and expenses incurred by us or with our consent on behalf of the **insureds** or reimbursed to any of the **insureds** by us, resulting solely from the investigation, adjustment, defense and appeal of any **claim. Defense costs** includes, but is not limited to, the cost of expert consultants and witnesses, and premiums for appeal, injunction, attachment or supersedeas bonds (but not the obligation to furnish such bonds)." (Ex. B, Policy).

68. Because coverage does not apply to the Underlying Lawsuit, any damages, settlements, judgments, and attorneys' fees, costs, expenses, and **defense costs** incurred in defense of the Underlying Lawsuit are not **loss** and Cincinnati has no obligation to pay or indemnify them.

69. Because the insurance does not apply to the Underlying Lawsuit, Cincinnati has no duty to defend the Underlying Lawsuit pursuant to Section VI.A. of the D&O Coverage Part, which states that Cincinnati has "no duty to defend the **insureds** against any **claim** to which this insurance does not apply."

70. Based on the foregoing, Cincinnati seeks a declaration that no coverage is afforded for the Underlying Lawsuit under the Policy; Cincinnati has no obligation to defend and indemnify the Association against the Underlying Lawsuit; and Cincinnati has no obligation to pay any damages, judgments, settlements, attorneys' fees, costs, and expenses incurred by the Association with respect to the Underlying Lawsuit.

71. Section XII.A. of the Policy's General Provisions Applicable to all Liability Coverage Parts provides:

> Any dispute including but not limited to tort claims or contract claims between an insured and us arising out of or relating to this policy shall be submitted to non-

13

binding mediation prior to commencement of an action between the parties. The mediator shall be chosen by agreement. If the parties cannot agree upon a mediator, the mediator shall be chosen by the American Arbitration Association.

72. The Association disputed Cincinnati's denial of coverage and defense for the Underlying Lawsuit, following which Cincinnati repeatedly demanded that the Association participate in non-binding mediation.

73. The Association has failed to respond and agree to Cincinnati's repeated demands that it participate in non-binding mediation, and therefore Defendants have waived Section XII.A. of the Policy.

74. A dispute exists with respect to coverage under the Policy for the Underlying Lawsuit.

75. An actual controversy of justiciable nature exists between Cincinnati and the Association, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§2201 and 2202, this Court is invested with the power to declare the rights and obligations of the parties hereto and to grant such relief as it deems necessary and proper.

76. Plaintiff, Cincinnati, respectfully requests that this Court:

   a. Determine, decide, adjudicate and declare the rights and obligations of the parties hereto with respect to the Policy described herein;

   b. Enter an Order finding and declaring that the Policy does not provide coverage for and does not apply to the Underlying Lawsuit;

   c. Enter an Order finding and declaring that Cincinnati has no duty to defend the Underlying Lawsuit and has no duty to pay **defense costs** or any attorneys' fees, costs, and expenses incurred by Defendants with respect to the Underlying Lawsuit;

   d. Enter an Order finding and declaring that Cincinnati has no duty to indemnify the Underlying Lawsuit and has no duty to pay any **loss,** judgments, settlements, or any other payments with respect to the Underlying Lawsuit; and

e.  Grant such other and further relief that this Honorable Court deems equitable and just, including the award of costs to Cincinnati.

## COUNT II
## Pled in the Alternative – Declaratory Judgment – Bodily Injury Exclusion

77. Cincinnati repeats and realleges the allegations of paragraphs 1 through 76 as the allegations of this paragraph 77 as though fully set forth herein.

78. This Count II is pled in the alternative and made without waiver of Cincinnati's position that the Underlying Lawsuit does not fall within the scope of the Insuring Agreement and does not trigger coverage under the Policy.

79. Farmers Insurance Company of Arizona is not a **subsidiary** (as that term is defined in the Policy) of The Tanoan Community Association, Inc. and is not an **insured** under the Policy.

80. Defendants Kaleb Garza, Zachary Tongier, Andrea L. Frederickson, J.L., Melissa Lopez are not **insured persons** (as that term is defined) under the Policy and are not **insureds** under the Policy.

81. The Association is the only defendant named in the Underlying Lawsuit which is an **insured** under the Policy since it is the **organization** as defined in Section II.N. of the D&O Coverage Part.

82. The Underlying Lawsuit is a **claim** as that term is defined in Section II.A.2. of the D&O Coverage Part.

83. Pursuant to Section III.A.1. of the D&O Coverage Part (cited at ¶35 *supra*) (the "Bodily Injury Exclusion"), Cincinnati is not liable to pay, indemnify or defend a **claim** for actual or alleged bodily injury, sickness, disease, or death of any person, mental anguish, or emotion distress.

84. The Underlying Lawsuit is a **claim** against the Association for J.G.'s bodily injury, mental anguish, and emotional distress.

15

85. Accordingly, the Bodily Injury Exclusion bars coverage and defense for the Underlying Lawsuit and the Policy does not provide coverage for and does not apply to the Underlying Lawsuit.

86. **Loss** is defined in Section II.N. of the D&O Coverage Part, in part, as **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage applies, including damages, settlements, and judgments. (Ex. B., Policy).

87. **Defense costs** are defined in part in Section II.B. as "reasonable and necessary fees, costs, and expenses incurred by us or with our consent on behalf of the **insureds** or reimbursed to any of the **insureds** by us, resulting solely from the investigation, adjustment, defense and appeal of any **claim. Defense costs** includes, but is not limited to, the cost of expert consultants and witnesses, and premiums for appeal, injunction, attachment or supersedeas bonds (but not the obligation to furnish such bonds)." (Ex. B, Policy).

88. Because coverage does not apply to the Underlying Lawsuit, any damages, settlements, judgments, and attorneys' fees, costs, expenses, and **defense costs** incurred in defense of the Underlying Lawsuit are not **loss** and Cincinnati has no obligation to pay or indemnify them.

89. Because the insurance does not apply to the Underlying Lawsuit, Cincinnati has no duty to defend the Underlying Lawsuit pursuant to Section VI.A. of the D&O Coverage Part, which states that Cincinnati has "no duty to defend the **insureds** against any **claim** to which this insurance does not apply."

90. Based on the foregoing, Cincinnati seeks a declaration that no coverage is afforded for the Underlying Lawsuit under the Policy; Cincinnati has no obligation to defend and indemnify the Association against the Underlying Lawsuit; and Cincinnati has no obligation to pay any damages, judgments, settlements, attorneys' fees, costs, and expenses incurred by the Association with respect to the Underlying Lawsuit.

91. Section XII.A. of the Policy's General Provisions Applicable to all Liability Coverage Parts provides:

> Any dispute including but not limited to tort claims or contract claims between an insured and us arising out of or relating to this policy shall be submitted to non-binding mediation prior to commencement of an action between the parties. The mediator shall be chosen by agreement. If the parties cannot agree upon a mediator, the mediator shall be chosen by the American Arbitration Association.

92. The Association disputed Cincinnati's denial of coverage and defense for the Underlying Lawsuit, following which Cincinnati repeatedly demanded that the Association participate in non-binding mediation.

93. The Association has failed to respond and agree to Cincinnati's repeated demands that it participate in non-binding mediation, and therefore Defendants have waived Section XII.A. of the Policy.

94. A dispute exists with respect to coverage under the Policy for the Underlying Lawsuit.

95. An actual controversy of justiciable nature exists between Cincinnati and the Association, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§2201 and 2202, this Court is invested with the power to declare the rights and obligations of the parties hereto and to grant such relief as it deems necessary and proper.

96. Plaintiff, Cincinnati, respectfully requests that this Court:

   a. Determine, decide, adjudicate and declare the rights and obligations of the parties hereto with respect to the Policy described herein;

   b. Enter an Order finding and declaring that the Policy does not provide coverage for and does not apply to the Underlying Lawsuit;

   c. Enter an Order finding and declaring that Cincinnati has no duty to defend the Underlying Lawsuit and has no duty to pay **defense costs** or any attorneys' fees, costs, and expenses incurred by Defendants with respect to the Underlying Lawsuit;

   d. Enter an Order finding and declaring that Cincinnati has no duty to indemnify the Underlying Lawsuit and has no duty to pay any **loss,** judgments, settlements, or any other payments with respect to the Underlying Lawsuit; and

e.  Grant such other and further relief that this Honorable Court deems equitable and just, including the award of costs to Cincinnati.

## **PRAYER FOR RELIEF**

WHEREFORE, pursuant to the foregoing, Plaintiff, Cincinnati Insurance Company, respectfully requests that judgment be entered in its favor and against the Defendants on all Counts of its Complaint, and prays that this Court:

A.  Determine, decide, adjudicate and declare the rights and obligations of the parties hereto with respect to the Policy described herein;

B.  Enter an Order finding and declaring that the Policy does not provide coverage for and does not apply to the Underlying Lawsuit;

C.  Enter an Order finding and declaring that Cincinnati has no duty to defend the Underlying Lawsuit and has no duty to pay defense costs or any attorneys' fees, costs, and expenses incurred by the Association with respect to the Underlying Lawsuit;

D.  Enter an Order finding and declaring that Cincinnati has no duty to indemnify the Underlying Lawsuit and has no duty to pay any loss, judgments, settlements, or any other payments with respect to the Underlying Lawsuit; and

E.  Grant such other and further relief that this Honorable Court deems equitable and just, including the award of costs to Cincinnati.

DATED this 11, day of February, 2026

Respectfully submitted:

/s/ Allison M. Beaulieu
Jones, Skelton & Hochuli, P.L.C.
8220 San Pedro Dr NE, Suite 420
Albuquerque, NM 87113
Tel.: (505) 339-3517
Fax: (505) 339-3211
Email: ABeaulieu@JSHFIRM.COM

Nancy K. Tordai (pro hac vice pending)
Peters and Nye LLP

14 Executive Court, Suite 2
South Barrington, IL 60010
Tel.: (847) 423-0353
Fax.: (847) 381-1693
Email: nancytordai@petersnye.com